IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY WYNKOOP, individually | : | |
| and on behalf of his minor children | : | |
| J.W. and G.W. | : | |
| 8228 Ohio River Blvd, Unit 46 | : | |
| Emsworth, PA 15202 | : | |
| PLAINTIFF, | : | |
| | : | CIVIL ACTION NO: 2:22-cv-814 |
| vs. | : | |
| | : | |
| AVONWORTH SCHOOL | : | |
| DISTRICT, DR. JEFF HADLEY, | : | |
| YU-LING CHENG-BEHR, | : | |
| KRISTIN THOMPASON, BEAU | : | |
| BLASER, JOHN BRANDT,  VICKI | : | JURY TRIAL DEMANDED |
| CARLSON, DANIELLE WHITE, | : | |
| KATHRYN MONTI, PATRICK | : | |
| STEWART, AMY TOKAR, and | : | |
| SANDRA BOLAIN, | : | |
| 258 Josephs Lane | : | |
| Pittsburgh, PA 15237 | : | |
| DEFENDANTS. | : | |

## COMPLAINT

Plaintiff Harry Wynkoop ("Plaintiff"), by and through his undersigned legal

counsel, hereby files this Complaint and Demand for Jury Trial, averring as

follows:

## PARTIES AND JURISDICTION

1.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331

and 28 U.S.C. § 1343.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions giving rise to Plaintiff's allegations occurred in the Western District of Pennsylvania, Plaintiff resides within the Western District of Pennsylvania, and Defendants are all located within the Western District of Pennsylvania.

## FACTUAL ALLEGATIONS

### *The Parties*

3.     Plaintiff is a resident within the Avonworth School District and has two minor school-aged children, J.W. and G.W.

4.     Plaintiff is the founder of My Kid, My Choice, an unincorporated organization opposed to forced masking of students.

5.     Plaintiff also hosts a radio program called Unindoctrinated Radio on WJAS 1320 AM.

6.     Defendant Avonwoth School District ("District") is a governmental entity governed by the provisions of the Public School Code of 1949, 24 P.S. § 1-101 *et seq.* and is located within Allegheny County at the following address: 258 Josephs Lane, Pittsburgh, PA 15237.

7.     Defendant Dr. Jeff Hadley is the Superintendent of the District.

8.     Defendant Ms. Yu-Ling Cheng-Behr is a public official serving as a member of the Avonworth School Board ("Board"), the entity charged with administering the District. *See* 24 P.S. § 3-301.

9.     Defendant Ms. Kristin Thompson is a public official serving as a member of the Board.

10.     Defendant Mr. Beau Blaser is a public official serving as the Vice President of the Board.

11.     Defendant Mr. John Brandt is a public official serving as a member of the Board.

12.     Defendant Ms. Vicki Carlson is a public official serving as the President of the Board.

13.     Defendant Ms. Danielle White is a public official serving as the Treasurer of the Board.

14.     Defendant Ms. Kathryn Monti is a public official serving as a member of the Board.

15.     Defendant Mr. Patrick Stewart is a public official serving as a member of the Board.

16.     Defendant Ms. Amy Tokar is a public official serving as a member of the Board.

17.     Prior to December 2022, Defendant Ms. Sandra Bolain was a public official serving as a member of the Board.

18.     Collectively, Ms. Cheng-Behr, Ms. Thompson, Mr. Blaser, Mr. Brandt, Ms. Carlson, Ms. White, Ms. Monti, Mr. Steward ad Ms. Tokar are referred to herein as "Board Defendants."

### The District's Masking Policy

19.     A novel coronavirus emerged in Wuhan, China, began infecting humans, spread throughout the world and is known to have the potential to cause Coronavirus Disease-2019 ("COVID-19") in humans.

20.     In response to fear of the spread of COVID-19, the Pennsylvania Office of the Governor declared a disaster on March 6, 2020.

21.     On June 10, 2021, the Pennsylvania General Assembly passed House Resolution 106 of 2021, which ended the Governor's disaster emergency.

22.     With the termination of the Governor's disaster emergency, every school district within the Commonwealth of Pennsylvania, including Defendants, evaluated whether to require students to wear masks between June 10, 2021 and the start of the 2021-2022 school year.

23.     In the evening of August 2, 2021, Defendants held a meeting of the Board to discuss, among other matters, whether to require all students to wear masks in order to enter school buildings.

24.     Plaintiff attended the meeting on August 2, 2021 for the purpose of expressing his opposition to forced masking to Defendants.

25.     During a subsequent meeting on August 9, 2021, the Board Defendants voted to force all students to wear masks in order to enter school buildings.

### *The District's Discrimination against Plaintiff's Children*

26.     On August 16, 2021, Board member Bolain emailed Board President Carlson to inquire whether Plaintiff's children reside within the District and asked whether a protest in which Plaintiff was slated to participate could "be stopped." A true and correct copy of this correspondence is attached hereto as Exhibit A.

27.     On August 16, 2021, Plaintiff attended another meeting of the Board to express his opposition to forced masking.

28.     On August 21, 2021, Plaintiff held a rally at the Ohio Township Community Park in opposition to Defendants' forced masking plan.[1]

29.     On August 31, 2021, the Pennsylvania Secretary of Health issued an Order titled "Order of the Acting Secretary of the Pennsylvania Department of Health Directing Face Coverings in School Entities" that purported to require all schools within the Commonwealth to force students to wear face coverings, unless "wearing a face covering would either cause a medical condition, or exacerbate an

---

[1] https://www.wpxi.com/news/top-stories/my-kid-my-choice-group-avonworth-parents-rally-against-school-mask-mandate/QTEGCRCPWNBBJMBHRMTQ5VWYWE/.

existing one, including respiratory issues that impede breathing, a mental health condition or a disability."[2]

30.     The Secretary's Order also provided that school must "Provide reasonable accommodations for individuals who state they have a medical condition, mental health condition, or disability that makes it unreasonable for the person to maintain a face covering."

31.     In accordance with the Secretary's Order, Plaintiff had J.W. and G.W. evaluated by Dr. Michael Daly, a licensed medical doctor for the purpose of obtaining a medical exemption from the mask requirement.

32.      Dr. Michael Daly evaluated J.W. and determined that due to J.W.'s medical conditions (specifically, asthma), J.W. qualified for a medical exemption. A copy of Dr. Daly's note (with J.W.'s name redacted) is attached hereto as Exhibit B.

33.     On or about April 6, 2021, Plaintiff submitted a statement from Dr. Michael Daly to the District.

34.     The District, however, refused to honor the medical exemption submitted by Plaintiff.

---

[2]

https://www.health.pa.gov/topics/Documents/Diseases%20and%20Conditions/Order%20of%20the%20Acting%20Secretary%20Directing%20Face%20Coverings%20in%20Schools.pdf.

35.    On or about November 17, 2021, Plaintiff submitted a medical exemption note from Dr. William C. Churma, who opined that "wearing a mask may activate [J.W.'s] breathing disorder." A copy of Dr. Churma's note (with J.W.'s name redacted) is attached hereto as Exhibit C.

36.    On or about December 17, 2021, Plaintiff submitted a further medical exemption from Dr. William P. Mueller, M.D., who stated that J.W. "has valid medical reasons to be exempted from wearing a mask and/or face shield while attending school and/or any school functions." A copy of Dr. Mueller's note (with J.W.'s name redacted) is attached hereto as Exhibit D.

37.    On February 14, 2022, Plaintiff submitted a statement from Dr. Lisa Hwang, MD who advised that J.W. "has been a patient of [Caring Hands Pediatrics] since 3/30/2017" and that J.W. has been diagnosed with asthma and has been treated for "asthma exacerbations several times." A copy of Dr. Hwang's February 14, 2022 letter, with the redaction of J.W.'s name, is attached hereto as Exhibit E.

38.    As a result of the District's refusal to honor medical exemptions for J.W., which medical exemption was necessary as a result of her disabilities, J.W. was segregated from her peers and forced to endure virtual learning.

39.    As a result of being segregated, J.W.'s grades have slipped dramatically.

40.    The District has provided tutors for other students in the District in virtual learning programs.

41.    On January 7, 2022, the District promised to provide a tutor for J.W.; however, as of this writing, the District has still not done so.

### Plaintiff's Protected First Amendment Speech

42.    Plaintiff participated in circulating a petition to the District asking Defendants to revoke its forced masking policy.[3]

43.    On August 24, 2021, Plaintiff held a rally at the Ohio Township Community Park in opposition to Defendants' forced masking plan.[4]

44.    On September 11, 2021, Plaintiff held another rally at the Ohio Township Community Park opposing Defendants' forced masking plan.[5]

45.    On September 13, 2021, Plaintiff attended a meeting of the Board where he again expressed his opposition to the District's masking plan.[6]

### The District's Retaliation Against
### Plaintiff for Exercising His Right to Free Speech

---

[3] https://pppc.me/petitions/petition-avonworth-school-district/.
[4] https://www.wpxi.com/news/top-stories/parents-nearly-dozen-school-districts-gather-north-park-protest-mask-requirements/C4TAAYMTD5A6BMNM52ESEJGXG4/; https://nashuproar.org/46058/news/mask-optional-supporters-rally-in-north-park/.
[5] https://www.youtube.com/watch?v=x2BpvChTt4k.
[6] https://go.boarddocs.com/pa/avnw/Board.nsf/files/CAPQ7667DF13/$file/RM%20MINUTES%20SEPT%2013%202021.pdf.

46.     After September 17, 2021, the District publicly disseminated personally identifiable information concerning Plaintiff's minor children.

47.     Specifically, the District disseminated an email clearly identifying Plaintiff, Plaintiff's wife, Jamie Wynkoop, and the identity of J.W.

48.     On November 11, 2021, the District, through its legal counsel, sent a letter to Plaintiff and his workplace falsely alleging that his minor children reside outside of the District, demanding that Plaintiff disenroll J.W. and G.W. from the District no later than November 23, 2021, and threatening Plaintiff with the possibility of being forced to pay "the value of back tuition for both children for all time that they were" allegedly "improperly enrolled in the District." A copy of the District's November 11, 2021, communication to Plaintiff is attached hereto as Exhibit E.

49.     On or about January 6, 2022, Plaintiff had a meeting with Superintendent Hadley, Elementary School Principal Bill Battistone, a member of Section 504 team, and the District's counsel, Attorney Williams Andrews, to discuss the letter.

50.     During the January 6, 2022 meeting, Attorney Andrews admitted that the District had no evidence that J.W. resided outside the District.

51.     The District originally scheduled a hearing regarding G.W.'s residency on December 14, 2021; however, due to scheduling conflicts, the parties did not reschedule a hearing.

52.     Starting on January 8, 2022, Plaintiff was frequently critical of the District's masking policy on his radio program and on social media.

53.     On January 30, 2022, a large wrestling tournament was held inside the District that hundreds of students and parents attended without wearing masks.

54.     On January 31, 2022, Plaintiff emailed District Superintendent Hadley to inquire whether he had any comment regarding the dichotomy of requiring students to wear masks during school hours but allowing student and others to attend a wrestling tournament without masks during the weekend.

55.     Hours after Plaintiff emailed Superintendent Hadley, the District's counsel sent a letter seeking to schedule a hearing for G.W. on February 8, 2022.

56.     The District held a hearing on February 8, 2022 regarding the residency of J.W. and G.W. before the Board Defendants.

57.     During the hearing, the District revealed that it had hired a private investigator to conduct surveillance operations of Plaintiff's children.

58.     On February 14, 2022, the District voted to find that Plaintiff did not establish that G.W. resides within the District. (An appeal of that decision is pending

before the Allegheny County Court of Common Pleas at *Wynkoop v. Avonworth School District*, No. SA-22-129.)

59.    On February 7, 2022, the Board Defendants voted to make masks optional during after school events, but continued to require students to wear mask in order to enter school buildings during the day.

60.    On December 10, 2021, the Pennsylvania Supreme Court declared the Secretary of Health's masking order void.  *See Corman v. Acting Secretary of Pennsylvania Department of Health*,__ A.3d ___, 2021 WL 6071796 (Pa. Dec. 10, 2021).

61.    Despite the lack of any legal authority to require masking, the District has continued to require all students to wear masks in order to enter school buildings, preventing J.W. from doing so as a result of her disability.

62.    Plaintiff, J.W. and G.W. have been harmed by the District's actions done in retaliation for Plaintiff's exercise of his rights under the First Amendment in that:

    a. The District has repeatedly refused to honor medical exemptions from its masking requirements for J.W. and has prevented J.W. from accessing school buildings;

    b. J.W. has experienced increased anxiety as a result of the District's decision to segregate J.W. to online learning;

c.  J.W.'s grades have dramatically fallen as a result of the District's segregation of J.W. to online learning;

d.  The District has provided students other than J.W. with tutoring but continues to not provide a tutor for J.W.;

e.  This District inquired regarding the residency of J.W. and G.W. shortly after Plaintiff's public comments in opposition to forced masking;

f.  The District demanded that Plaintiff disenroll both J.W. and G.W. from the District in November of 2021 without any evidence;

g.  The District publicly disseminated personally identifiable information of J.W.; and

h.  The District selectively initiated an investigation into the residency of Plaintiff's minor children.

## CAUSES OF ACTION
## COUNT I - FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

63.  The averments of the preceding paragraphs are incorporated herein by reference.

64.  "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *See Bartley v. Taylor*, 25 F.Supp.3d 521 (M.D.Pa. 2014) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)).

65.     Retaliation is "actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Id*. (quoting *ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993)

66.     "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Id*. (citing *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 415–416 (4th Cir. 2006)).

67.     "A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity." *Id*. (citing *Balt. Sun Co.*, 437 F.3d at 416)

68.     The question before this Court is whether "a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Id.* (citing *Balt. Sun Co.*, 437 F.3d at 416).

69.     Here, Plaintiff has engaged in protected conduct for purposes of the First Amendment.

70.     Specifically, Plaintiff has

a. Advocated against forced masking during public school board meetings;

b. Petitioned the District to end forced masking;

c. Organized and protested against forced masking in the District multiple times in the fall of 2021; and

d. Advocated against forced masking in the District during his radio program.

71.   In response to Plaintiff's exercise of his First Amendment rights, Defendants have engaged in a policy, practice or custom of retaliation against Plaintiff and his family by

a. Repeatedly refusing to honor medical exemptions from the District's masking requirements for J.W. and G.W., despite medical evidence supporting such exemptions;

b. Segregating J.W. to online learning;

c. Failing to provide J.W. with a tutor while providing other similarly-situated individuals with tutoring;

d. Demanding that Plaintiff disenroll both J.W. and G.W. from the District in November of 2021 without any evidence;

e. Publicly disseminating personally identifiable information of J.W. and G.W.; and

     f.   Selectively investigating the residency of Plaintiff's minor children.

72.    As a result of Plaintiff's passionate course of advocacy against forced masking, the District retaliated and targeted Plaintiff as set forth above.

73.    Defendants' actions are not merely a de minimis inconvenience because J.W. and G.W. have been harmed by the District's actions as set forth above.

74.    Defendants' conduct as set forth above is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed.Appx. 817, 824 (3d Cir.2009) (unpublished) (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.2006)).

75.    Plaintiff seeks compensatory damages, punitive damages and its reasonable attorney's fees and court costs as a result of Defendants' intentional and wrongful conduct.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.   For compensatory damages for Plaintiff's emotional pain and suffering in an amount to be proven at trial;

2.   For punitive damages in an amount to be determined at trial;

3.   For liquidated damages;

4.   For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988; and

5.   For such other and further relief that this Court deems just and proper.

## <u>COUNT II – DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA (42 U.S.C. § 1983)</u>

76.     The averments of the preceding paragraphs are incorporated herein by reference.

77.     The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1) & (2).

78.     Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

79.     The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

80.     The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

81.     Defendant's forced masking policy and refusal to honor J.W.'s medical exemptions from forced masking prevented J.W. from being able to attend school in person.

82.     Specifically, Defendants have failed and are failing to make a reasonable accommodation for J.W., under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7).

83.     Defendants have and are excluding J.W. from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130.

84.     Defendants have and are failing to make their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150.

85.     Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

86.     The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that "have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3)(i).

87.    Defendants do not have the authority to circumvent the ADA and its protections for students with disabilities.

88.    Excluding children from the public school classrooms because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

89.    Plaintiff, in his own capacity and as a parent of disabled children, seeks to compel Defendants to allow J.W. to attend school in person without a mask based on the medical documentation previously provided to the District.

90.    Plaintiff's children are individuals with disabilities recognized under the Americans with Disabilities Act.

91.    Plaintiff's children are otherwise qualified to participate in school.

92.    J.W., as a disabled student, continues to and has been deprived benefits and services to which all students are entitled, specifically the right to attend and participate in all in-person educational opportunities offered by the school for which J.W. is qualified.

93.    Plaintiff seeks compensatory damages, punitive damages and its reasonable attorney's fees and court costs as a result of Defendants' intentional and wrongful conduct.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. For compensatory damages for Plaintiff's emotional pain and suffering in an amount to be proven at trial;

2. For punitive damages in an amount to be determined at trial;

3. For liquidated damages;

4. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988; and

5. For such other and further relief that this Court deems just and proper.

## COUNT III – RETALIATION (SECTION 504 and ADA)

94.     The averments of the preceding paragraphs are incorporated herein by reference.

95.     Both Section 504 and the ADA contain anti-retaliation provisions. *See* 34 C.F.R. § 100.7(e); 42 U.S.C. § 12203.

96.     The prima facie elements for a claim of retaliation are the same under ADA and Section 504 as Title VII. *Houlihan v. Sussex Technical Sch. Dist.*, 461 F.Supp.2d 252, 257 (D.Del.2006); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997).

97.     In order to demonstrate a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in protected activity, and the retaliator knew of the involvement; (2) adverse action was taken by the defendant either during or after the protected activity that was sufficient to deter a person of ordinary firmness from

engaging in protected activity; and (3) a causal connection between the protected activity and the adverse action. *Hesling v. Seidenberger*, 286 Fed.Appx. 773, 773–75 (3d Cir. 2008).

98.    Here, Plaintiff has engaged in protected conduct for purposes of Section 504 of the Rehabilitation Act and the ADA.

99.    Specifically, Plaintiff has

   a. Advocated against forced masking during public school board meetings;

   b. Petitioned the District to end forced masking;

   c. Organized and protested against forced masking in the District multiple times in the fall of 2021; and

   d. Advocated against forced masking in the District during his radio program.

100.   In response to Plaintiff's exercise of his First Amendment rights, Defendants have engaged in a pattern of retaliation against Plaintiff and his family by

   a. Repeatedly refusing to honor medical exemptions from the District's masking requirements for J.W., despite medical evidence supporting such exemptions;

   b. Segregating J.W. to online learning;

c. Failing to provide J.W. with a tutor while providing other similarly-situated individuals with tutoring;

d. Demanding that Plaintiff disenroll both J.W. and G.W. from the District in November of 2021 without any evidence;

e. Publicly disseminating personally identifiable information of J.W. and G.W.; and

f. Selectively investigating the residency of Plaintiff's minor children.

101. As a result of Plaintiff's passionate course of advocacy against forced masking, the District retaliated and targeted Plaintiff as set forth above.

102. Defendants' actions are not merely a de minimis inconvenience in that J.W. and G.W. have been harmed by the District's actions as set forth above.

103. Defendants' conduct as set forth above is "sufficient to deter a person of ordinary firmness from exercising his or her rights." *Minnich v. Ne. Sch. Dist.*, No. 1:20-CV-00378, 2021 WL 3166013, at *9 (M.D. Pa. July 27, 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

104. Plaintiff seeks compensatory damages, punitive damages and its reasonable attorney's fees and court costs as a result of Defendants' intentional and wrongful conduct.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. For compensatory damages for Plaintiff's emotional pain and suffering in an amount to be proven at trial;

2. For punitive damages in an amount to be determined at trial;

3. For liquidated damages;

4. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1988; and

5. For such other and further relief that this Court deems just and proper.

LAW OFFICE OF TUCKER R. HULL, LLC

By:    */s/ J. Chadwick Schnee*
Tucker R. Hull, Esquire (PA 306426)
J. Chadwick Schnee, Esquire (PA 306907)
Law Office of Tucker R. Hull, LLC
108 W. Main Street
P.O. Box 330
Annville, PA  17003
(717) 685-7947
Fax: (717) 685-7942
chadwick@tucker-hull-law.com
tucker@tucker-hull-law.com

DATE: 05/25/22    *Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY WYNKOOP, individually | : | |
| and on behalf of his minor children | : | |
| J.W. and G.W. | : | |
| 8228 Ohio River Blvd, Unit 46 | : | |
| Emsworth, PA 15202 | : | |
| PLAINTIFF, | : | |
| | : | CIVIL ACTION NO: _____ |
| vs. | : | |
| | : | |
| AVONWORTH SCHOOL | : | |
| DISTRICT, DR. JEFF HADLEY, | : | |
| YU-LING CHENG-BEHR, | : | |
| KRISTIN THOMPSASON, BEAU | : | |
| BLASER, JOHN BRANDT,  VICKI | : | PLAINTIFF'S DEMAND FOR JURY |
| CARLSON, DANIELLE WHITE, | : | TRIAL |
| KATHRYN MONTI, PATRICK | : | |
| STEWART, AMY TOKAR, and | : | |
| SANDRA BOLAIN, | : | |
| 258 Josephs Lane | : | |
| Pittsburgh, PA 15237 | : | |
| DEFENDANTS. | : | |

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Harry

Wynkoop, individually and on behalf of his minor children J.W. and G.W.,

demands trial by jury in this action of all issues so triable.

LAW OFFICE OF TUCKER R. HULL, LLC

By:    */s/ J. Chadwick Schnee*
Tucker R. Hull, Esquire (PA 306426)
J. Chadwick Schnee, Esquire (PA 306907)
Law Office of Tucker R. Hull, LLC
108 W. Main Street
P.O. Box 330
Annville, PA  17003
(717) 685-7947
Fax: (717) 685-7942
chadwick@tucker-hull-law.com
tucker@tucker-hull-law.com
*Counsel for Plaintiff*

DATE: 05/25/22