**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARRY WYNKOOP, individually and on behalf of his minor children J.W. and G.W., | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Civil Action No. 2:22-cv-814 |
| | : |
| AVONWORTH SCHOOL DISTRICT, DR. | : |
| JEFF HADLEY, YU-LING CHENG-BEHR, | : |
| KRISTIN THOMPASON, BEAU BLASER, | : |
| JOHN BRANDT, VICKI CARLSON, | : |
| DANIELLE WHITE, KATHRYN MONTI, | : |
| PATRICK STEWART, AMY TOKAR, and | : |
| SANDRA BOLAIN, | : |

**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants, Avonworth School District, Dr. Jeff Hadley, Yu-Ling Cheng-Behr, Kristin Thompason, Beau Blaser, John Brandt, Vicki Carlson, Danielle White, Kathryn Monti, Patrick Stewart, Amy Tokar, and Sandra Bolain (hereinafter the "Defendants"), by and through their attorneys, Andrews & Price, LLC, files the following Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    FACTS / PROCUEDURAL POSTURE**

Plaintiff initiated this matter by the filing of a Complaint on May 30, 2022 (ECF 1).  On December 15, 2022, Plaintiff filed an Amended Complaint (ECF 10). As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant assumes Plaintiff's allegations to be true, and views all facts in the light most favorable to him. Viewed according to these standards, the facts

affecting Plaintiff's claims against the Defendants are construed as follows for purposes of resolving the Motion to Dismiss.[1]

Plaintiff is a resident within the Avonworth School District and has two minor school-aged children, J.W. and G.W. (Amended Complaint, hereinafter "C", ¶ 3). Plaintiff is the founder of My Kid, My Choice, an unincorporated organization opposed to forced masking of students and hosts a radio program called Unindoctrinated Radio on WJAS 1320 AM. (C ¶¶ 4, 5). Defendant Dr. Jeff Hadley is the Superintendent of the Avonworth District (hereinafter the "District"). (C ¶ 7). Defendants, Ms. Yu-Ling Cheng-Behr, Ms. Kristin Thompson, Mr. Beau Blaser, Mr. John Brandt, Ms. Vicki Carlson, Ms. Danielle White, Ms. Kathryn Monti, Mr. Patrick Stewart, and Ms. Amy Tokar are public officials serving as members of the Avonworth School Board ("Board"), the entity charged with administering the District. (C ¶¶ 8-16). Prior to December 2022, Defendant Ms. Sandra Bolain was a member of the Board. (C ¶ 17).

Plaintiff alleges that a novel coronavirus emerged in Wuhan, China, began infecting humans, spread throughout the world and is known to have the potential to cause Coronavirus Disease-2019 ("COVID-19") in humans. (C ¶ 19). In response to fear of the spread of COVID-19, the Pennsylvania Office of the Governor declared a disaster on March 6, 2020. (C ¶ 20). On June 10, 2021, the Pennsylvania General Assembly passed House Resolution 106 of 2021, which ended the Governor's disaster emergency. (C ¶ 21). With the termination of the Governor's disaster emergency, every school district within the Commonwealth of Pennsylvania, including Defendants, evaluated whether to require students to wear masks between June 10, 2021, and the start of the 2021-2022 school year. (C ¶ 22).

---

[1] In accordance with the standard of review, the "facts" relevant to this Motion to Dismiss are taken from the Plaintiff's Complaint. By no means do the Defendants concur with this rendition of the facts other than for the purpose of resolving this motion.

In the evening of August 2, 2021, Defendants held a meeting of the Board to discuss, among other matters, whether to require all students to wear masks in order to enter school buildings. (C ¶ 23). Plaintiff attended the meeting on August 2, 2021, for the purpose of expressing his opposition to forced masking to Defendants. (C ¶ 24). During a subsequent meeting on August 9, 2021, the Board voted to force all students to wear masks in order to enter school buildings. (C ¶ 25).

On August 16, 2021, Board member Bolain emailed Board President Carlson to inquire whether Plaintiff's children reside within the District and asked whether a protest in which Plaintiff was slated to participate could "be stopped." (C ¶ 26; C, Ex. "A"). On August 16, 2021, Plaintiff attended another meeting of the Board to express his opposition to forced masking. (C ¶ 27). On August 21, 2021, Plaintiff held a rally at the Ohio Township Community Park in opposition to Defendants' forced masking plan. (C ¶ 28).

On August 31, 2021, the Pennsylvania Secretary of Health issued an Order titled "Order of the Acting Secretary of the Pennsylvania Department of Health Directing Face Coverings in School Entities" that purported to require all schools within the Commonwealth to force students to wear face coverings, unless "wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability." (C ¶ 29). The Secretary's Order also provided that school must "Provide reasonable accommodations for individuals who state they have a medical condition, mental health condition, or disability that makes it unreasonable for the person to maintain a face covering." (C ¶ 30).

In accordance with the Secretary's Order, Plaintiff had J.W. and G.W. evaluated by Dr. Michael Daly, a licensed medical doctor, for the purpose of obtaining a medical exemption from the mask requirement. (C ¶ 31). Dr. Michael Daly evaluated J.W. and determined that due to J.W.'s medical conditions (specifically, asthma), J.W. qualified for a medical exemption. (C ¶ 32). On or about April 6, 2021, Plaintiff submitted a statement from Dr. Michael Daly to the District. (C ¶ 33). Plaintiffs allege that the District refused to honor the medical exemption submitted by Plaintiff. (C ¶ 34). On or about November 17, 2021, Plaintiff submitted a medical exemption note from Dr. William C. Churma, who opined that "wearing a mask may activate [J.W.'s] breathing disorder." (C ¶ 35).

On December 10, 2021, the Pennsylvania Supreme Court declared the Secretary of Health's masking Order void. *Corman v. Acting Secretary of Pennsylvania Department of Health*, 268 A.3d 1080 (Pa. 2021). (C, ¶74).

On or about December 17, 2021, Plaintiff submitted a further medical exemption from Dr. William P. Mueller, M.D., who stated that J.W. "has valid medical reasons to be exempted from wearing a mask and/or face shield while attending school and/or any school functions." (C ¶ 36).

On February 7, 2022, the District voted to make masks optional during after school events but continued to require students to wear masks in order to enter school buildings during the day. (C ¶ 73).

On February 14, 2022, Plaintiff submitted a statement from Dr. Lisa Hwang, MD who advised that J.W. "has been a patient of [Caring Hands Pediatrics] since 3/30/2017" and that J.W. has been diagnosed with asthma and has been treated for "asthma exacerbations several times." (C ¶ 37).

4

Plaintiffs assert that, as a result of the District's refusal to honor medical exemptions for J.W., which medical exemption was necessary as a result of her disabilities, J.W. was segregated from her peers and forced to endure virtual learning. (C ¶ 38). As a result of being segregated, J.W.'s grades slipped dramatically. (C ¶ 39).

The District has provided tutors for other students in the District in virtual learning programs. (C ¶ 40). On January 7, 2022, the District promised to provide a tutor for J.W.; Plaintiffs allege that, as of the date of the filing of Plaintiff's Complaint, the District had not done so. (C ¶ 41).

Plaintiff participated in circulating a petition to the District asking Defendants to revoke its forced masking policy. (C ¶ 42). On August 24, 2021, Plaintiff held a rally at the Ohio Township Community Park in opposition to Defendants' forced masking plan. (C ¶ 43). On September 11, 2021, Plaintiff held another rally at the Ohio Township Community Park opposing Defendants' forced masking plan. (C ¶ 44). On September 13, 2021, Plaintiff attended a meeting of the Board where he again expressed his opposition to the District's masking plan. (C ¶ 45).

After September 17, 2021, the District is alleged to have publicly disseminated personally identifiable information concerning Plaintiff's minor children. (C ¶ 46). Specifically, the District allegedly disseminated an email identifying Plaintiff, Plaintiff's wife, Jamie Wynkoop, and the identity of J.W. (C ¶ 47).

On November 11, 2021, the District, through its legal counsel, sent a letter to Plaintiff and his workplace falsely alleging that his minor children reside outside of the District, demanding that Plaintiff disenroll J.W. and G.W. from the District no later than November 23, 2021, and threatening Plaintiff with the possibility of being forced to pay "the value of back tuition for both children for all time that they were" allegedly "improperly enrolled in the District." (C ¶ 48).

On or about January 6, 2022, Plaintiff had a meeting with Superintendent Hadley, Elementary School Principal Bill Battistone, a member of Section 504 team, and the District's counsel, Attorney Williams Andrews, to discuss the letter. (C ¶ 49). During the January 6, 2022, meeting, Attorney Andrews allegedly admitted that the District had no evidence that J.W. resided outside the District. (C ¶ 50).

The District originally scheduled a hearing regarding G.W.'s residency on December 14, 2021; however, due to scheduling conflicts, the parties did not reschedule a hearing. (C ¶ 51). Starting on January 8, 2022, Plaintiff was frequently critical of the District's masking policy on his radio program and on social media. (C ¶ 52).

On January 30, 2022, a large wrestling tournament was held inside the District that hundreds of students and parents attended without wearing masks. (C ¶ 53). On January 31, 2022, Plaintiff emailed District Superintendent Hadley to inquire whether he had any comment regarding the dichotomy of requiring students to wear masks during school hours but allowing student and others to attend a wrestling tournament without masks during the weekend. (C ¶ 54). Hours after Plaintiff emailed Superintendent Hadley, the District's counsel sent a letter seeking to schedule a hearing for G.W. on February 8, 2022. (C ¶ 55).

The District held a hearing on February 8, 2022, regarding the residency of J.W. and G.W. before the Board. (C ¶ 56). During the hearing, the District revealed that it had hired a private investigator to conduct surveillance operations of Plaintiff's children. (C ¶ 57). On February 14, 2022, the District voted to find that Plaintiff did not establish that G.W. resides within the District.

An appeal of that decision was taken to the Allegheny County Court of Common Pleas at *Wynkoop v. Avonworth School District*, No. SA-22-129.). (C ¶ 58). In the appeal, the Court entered an order sustaining Plaintiff's statutory appeal. (C ¶59).  Plaintiff asserts that the District reached

a wrongful and erroneous decision that G.W. was not a resident of the District by relying upon fatally flawed evidentiary grounds and was contrary to Pennsylvania Law. (C ¶61).   Plaintiff further asserts that the District's purpose and intent was not truly toward investigating in good faith the residency of G.W. but was a means of retaliating against the Plaintiff for his critical comments of the District and School Board. (C ¶66).  Plaintiff incurred attorney's fees as a result of the residency hearing conducted by the District, and the Plaintiff's subsequent appeal. (C ¶69). The District has filed an appeal to PA Commonwealth Court from the lower court's decision on the residency issue. (C ¶70).

On March 7, 2022, the District revised its ARP ESSR Health and Safety Plan to provide that masks were optional for K-12 staff, students, and visitors during the school day and for all evening activities. (See March 7, 2022, Notes of Avonworth School District Board of Directors, and Avonworth School District revised Health and Safety Plan, attached hereto as Exhibits "A" and "B").[2]  Plaintiff omits any reference in his Amended Complaint to the District's recission of its mandatory mask policy in March of 2022).  Instead, in both the original Complaint and the Amended Complaint, Plaintiff erroneously asserts that, despite the lack of any legal authority to require masking, the District has continued to require all students to wear masks in order to enter school buildings, preventing J.W. from doing so as a result of her disability. (C ¶ 75).

Plaintiff alleges that he, J.W. and G.W. have been harmed by the District's actions done in retaliation for Plaintiff's exercise of his rights under the First Amendment in that: 1) the District has repeatedly refused to honor medical exemptions from its masking requirements for J.W. and

---

[2] When deciding a Rule 12(b) Motion to Dismiss, the Court may consider matters of public record. See *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), citing *5A C. Wright & A. Miller, Federal Practice and Procedure* § 1357, at 299 (2d ed.1990); *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988).

has prevented J.W. from accessing school buildings; 2) J.W. has experienced increased anxiety as a result of the District's decision to segregate J.W. to online learning; 3) J.W.'s grades have dramatically fallen as a result of the District's segregation of J.W. to online learning; 4) the District has provided students other than J.W. with tutoring but continues to not provide a tutor for J.W.; 5) the District inquired regarding the residency of J.W. and G.W. shortly after Plaintiff's public comments in opposition to forced masking; 6) the District demanded that Plaintiff disenroll both J.W. and G.W. from the District in November of 2021 without any evidence; 7) the District publicly disseminated personally identifiable information of J.W.; and 8) the District selectively initiated an investigation into the residency of Plaintiff's minor children. (C ¶ 76).

Plaintiff's Complaint consists of three counts.  Under Count I based on a claim of First Amendment Retaliation pursuant to 42 U.S.C. § 1983, Plaintiff asserts that in response to Plaintiff's exercise of free speech, Defendants have engaged in a policy, practice or custom of retaliation against Plaintiff and his family by: 1) repeatedly refusing to honor medical exemptions from the District's masking requirements for J.W. and G.W., despite medical evidence supporting such exemptions; 2) segregating J.W. to online learning; 3) failing to provide J.W. with a tutor while providing other similarly situated individuals with tutoring; 4) demanding that Plaintiff disenroll both J.W. and G.W. from the District in November of 2021 without any evidence; 5) publicly disseminating personally identifiable information of J.W. and G.W.; and 6) selectively investigating the residency of Plaintiff's minor children. (C ¶¶ 78-89).  As to Count I, Plaintiff seeks compensatory damages, punitive damages, liquidated damages, and reasonable attorney's fees and court costs from the District.  Plaintiff also seeks to recover attorney's fees and costs incurred by Plaintiff in having to participate in the residency hearing conducted by the District,

and for the subsequent appeals taken to the Court of Common Pleas of Allegheny County and to PA Commonwealth Court.[3] (C, ¶¶ 69, 89).

Under Count II based on a claim of Discrimination on the Basis of Disability in Violation of the ADA, Plaintiff asserts that Defendants' forced masking policy and refusal to honor J.W.'s medical exemptions from forced masking prevented J.W. from being able to attend school in person. Specifically, Plaintiff alleges that Defendants have failed and are failing to make a reasonable accommodation for J.W. and are excluding J.W. from participation in public education. Plaintiff alleges that J.W., as a disabled student, continues to and has been deprived benefits and services to which all students are entitled, specifically the right to attend and participate in all in-person educational opportunities offered by the school for which J.W. is qualified. (C ¶¶ 91-106). As to Count II, Plaintiff seeks compensatory damages, punitive damages, liquidated damages, and reasonable attorney's fees and court costs from the District. (C ¶107; WHEREFORE clause).

Under Count III, Plaintiff asserts a claim of Retaliation pursuant to Section 504 of the Rehabilitation Act and the ADA on the same bases asserted under Count I. (C ¶¶ 94-104). Again, Plaintiff seeks compensatory damages, punitive damages, liquidated damages, and reasonable attorney's fees and court costs from the District. (C ¶118; WHEREFORE clause).

## II. __STANDARD OF REVIEW__

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all

---

[3] Plaintiff's claim for attorney's fees and costs related to the District's residency hearing (and subsequent appeals) is the only material difference between the Plaintiff's original Complaint (ECF 1) and the Plaintiff's Amended Complaint.

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Third Circuit requires a court to "permit a curative amendment" of a complaint, "unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2002). Lastly, while courts generally do not consider affirmative defenses at the motion-to-dismiss stage

of a case, they may be addressed when they appear on the face of the complaint. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

III.   <u>ARGUMENT</u>

   **A.  VIRTUALLY ALL CLAIMS ASSERTED IN COUNTS I, II, and III, ARE MOOT.**

     "[A]n appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it impossible for the court to grant any effectual relief whatsoever." *County of Butler v. Governor of PA*, 8 F.4th 226, 229 (3d. Cir 2021), citing *In re World Imports Ltd.*, 820 F.3d 576, 582 (3d Cir. 2016). The District's mask mandate was no longer in effect at the time of filing of Plaintiff's original Complaint.  In addition thereto, the August 31, 2021, Order of the Acting Secretary of Health which required all schools in the Commonwealth to force students to wear face coverings (See ¶29 of Plaintiff's Amended Complaint) was declared unconstitutional.  As a result, the "law no longer provided the Secretary of Health a mechanism" to "repeat the alleged harm." *Rendell v. Rumsfeld*, 484 F.3d 236, 242 (3d Cir. 2007). Moreover, the District's mask mandate had been rescinded at the time of filing of the Complaint, and there was consequently no relief that this Court could grant concerning the mask mandate.  Thus, the case is moot, as the claims raised in the Complaint no longer present a live case or controversy. See *Trump v. Hawaii*, ⸺ U.S. ⸺, 138 S. Ct. 377, 199 L.Ed.2d 275 (2017); See also *Spell v. Edwards*, 962 F.3d 175, 178-79 (5th Cir. 2020) (observing that "there is nothing injuring the plaintiff and, consequently, nothing for the court to do").

     The "capable of repetition yet evading review" exception to mootness does not apply. That exception is "narrow" and "applies only in exceptional situations," *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017), where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same

complaining party will be subject to the same action again," *Id.* There must be more than a theoretical possibility of the action occurring against the complaining party again; it must be a reasonable expectation or a demonstrated probability. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).

Plaintiff bears the burden to show that the "capable of repetition yet evading review" exception applies, see *Belitskus v. Pizzingrilli*, 343 F.3d 632, 648 (3d Cir. 2003) (placing the burden on the party seeking to have their claim excepted from mootness based on the "capable of repetition yet evading review" exception); *N.J. Turnpike Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir. 1985) ("It is the burden of the moving party to establish that the issue is 'capable of repetition yet evading review.'"). Plaintiff cannot carry that burden.

The Third Circuit Court recently considered the mootness issue in a case involving mask mandates.  See *Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 229 (3d Cir. 2021), *cert. denied sub nom. Butler Cnty. v. Wolf*, 142 S. Ct. 772 (2022).  In *County of Butler*, the petitioners sought a declaratory judgment regarding emergency measures implemented between March and July of 2020 by Governor Wolf and Pennsylvania's Secretary of Health in response to the declared public health emergency occasioned by COVID-19. By the time the Third Circuit heard the matter, circumstances had changed. On the health front, society learned more about how COVID-19 spread and the efficacy of masks, therapeutics had been developed, and vaccines had been manufactured and distributed.

There were also changes on the legal front. An amendment to the Pennsylvania Constitution and a concurrent resolution of the Commonwealth's General Assembly restricted the Governor's authority to enter masking Orders. In addition, the challenged orders expired by their own terms.  *County of Butler*, 8 F.4th at 230. Under these circumstances, the Third Circuit

determined that the matter was moot and that the "capable of repetition yet evading review" mootness exception did not apply. *Id.* at 230-31. The Third Circuit noted that, for "capable of repetition yet evading review" mootness to apply, "[t]here must be more than a theoretical possibility of the action occurring against the complaining party again; it must be a reasonable expectation or a demonstrated probability." *Id.* at 231.

In the recent Pennsylvania Commonwealth Court case of *R.M. et al. v. Ortega*, 2022 WL 17347632 (Pa. Commw. 2022)[4] (a case in which Petitioners are represented by Plaintiff's Counsel in the instant action), the Court cited the *County of Butler* decision in holding that claims involving School District's legal authority to mandate masking were moot, because none of the School Districts that were parties to the lawsuit were continuing to require masking.

The vast majority of claims of improper conduct by the District and alleged harm suffered by Plaintiff's children in all three counts of Plaintiff's Complaint were moot as of March 7, 2022 (i.e., approximately two months before Plaintiff filed his lawsuit): 1) that the District refuses to honor medical exemptions from masking requirements for J.W., and prevents J.W. from accessing school buildings; 2) that J.W. experiences anxiety as a result of the District allegedly segregating J.W. to online learning; 3) that J.W.'s grades are falling as a result of the District allegedly segregating J.W. to online learning; 4) that the District allegedly refused to provide a tutor to J.W.; 5) that the District should be compelled to allow J.W. to attend school without a mask under the ADA.

The District contends that all claims asserted in Counts II and III of Plaintiff's Complaint are moot. With respect to Count I of the Complaint, the District asserts that only two of Plaintiff's claims survive a mootness argument – i.e., that the District allegedly retaliated against Plaintiff for

---

[4] A copy of the Court's Unpublished Opinion is attached hereto as Exhibit "C").

exercising his First Amendment rights by: 1) publicly disseminating personally identifiable information of J.W. and G.W.; and 2) initiating a challenge to the residency of Plaintiff's minor children.  The District will address in other sections of the within brief, *infra*, the legal bases for dismissal of these claims as well.

### B.  PLAINTIFF HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Without waiving its mootness argument, The District asserts that Plaintiff's ADA Discrimination Claim under Count II should be dismissed on both procedural and substantive grounds.  Plaintiff's ADA Discrimination claim under Count II is asserted based on J.W.'s alleged deprivation of the benefits and services to in person educational opportunities offered by the District. (C ¶ 106). Furthermore, under this claim Plaintiff states that he "seeks to compel Defendants to allow J.W. to attend school in person without a mask." (C ¶ 103).

Additionally, Plaintiff brings his 1983 claim under Count I and his ADA and 504 Retaliation claim under Count III based on Defendants allegedly refusing to honor medical exemptions from the District's masking requirements for J.W., segregating J.W. to online learning, and failing to provide J.W. with a tutor. (C ¶¶ 85, 114).

Due to the nature of these claims, Plaintiff has failed to exhaust his administrative remedies prior to bringing his claims in court. The exhaustion requirement stems not from the Section 1983, the ADA, or the Rehabilitation Act, themselves, but rather from the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482.

The interplay between Section 504 of the Rehabilitation Act, the ADA, and the IDEA has been examined by the Supreme Court in *Fry v. Napoleon Community Schools*, 137 S.Ct. 743 (2017). As described in *Fry*, the IDEA guarantees individually tailored educational services for children with disabilities, while ADA and 504 promise nondiscriminatory access to public institutions for people with disabilities of all ages. *Id.* Each statute provides individuals with

disabilities the ability to file a complaint for damages when its substantive guarantees are violated. Section 504 and ADA discrimination claims may be brought directly to federal courts. 20 U.S.C. § 794a(a)(2) (§ 504); 42 U.S.C. § 12133 (ADA). However, the IDEA requires a plaintiff to exhaust administrative procedures before seeking judicial relief. 20 U.S.C. § 1415(l).

Because public schools are federally funded public entities responsible for educating children with disabilities, a single act by a school may violate all three statutes. *Fry* at 756 (2017). Further, the overlapping protections afforded by these statutes often permit a plaintiff to plead a claim under the ADA or 504, without reference to the IDEA in an attempt to avoid exhaustion requirements. *Id.* at 755.

The IDEA's exhaustion requirement addresses this overlap by extending beyond its borders to capture claims that are not filed under its name but seek relief available under its provisions:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, [the ADA, 504] or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [the IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415 (l). While this language does not limit the protections of the ADA or Section 504, it "compels exhaustion when a plaintiff seeks relief that is available under the IDEA." *Fry*, 137 S. Ct. at 743. Thus, a plaintiff bringing suit under the ADA or Section 504 must in certain circumstances first exhaust the IDEA's administrative remedies, even if the IDEA is not referenced in the pleading. *Id.* at 750.

Under the administrative remedies of the IDEA, any decision by a hearing officer on a request for substantive relief "shall" be "based on a determination of whether the child received a free appropriate public education [("FAPE")]." § 1415(f)(3)(E)(i). *Id.* at 754. The only relief that

an IDEA officer can give—hence the thing a plaintiff must seek in order to trigger § 1415(l)'s exhaustion rule—is relief for the denial of a FAPE. *Id.* at 753.

> Suppose that a parent's complaint protests a school's failure to provide some accommodation for a child with a disability. If that accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. But if it is not, he cannot—even though the dispute is between a child with a disability and the school she attends. There might be good reasons, unrelated to a FAPE, for the school to make the requested accommodation. Indeed, another federal law (like the ADA or Rehabilitation Act) might require the accommodation on one of those alternative grounds. But still, the hearing officer cannot provide the requested relief. His role, under the IDEA, is to enforce the child's "substantive right" to a FAPE. And that is all.

*Id.* at 754 (internal citations omitted). Therefore, "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee . . . a free appropriate public education." *Id.* at 748. The IDEA requires exhaustion only where the plaintiff "'seek[s] relief that is also available' under the IDEA." *Id.* at 752 (quoting 20 U.S.C. § 1415(l)). "[T]o meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.*

In determining whether the gravamen of a complaint a school concerns the denial of a FAPE, the Court in *Fry* posed two hypothetical questions. These questions focus on whether the claim could survive outside the school setting or be pressed by non-students:

> "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable

claim." *Id.* at 756-57.

Where a claim can survive in a non-school environment or with a nonstudent plaintiff, the aims of the ADA and 504 are likely at issue. Those statutes "aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs." *Id.* at 756.

The standard established in *Fry* was recently examined by this Court in the context of a claim brought by parents of students alleging that a school district's mask optional policy violated the ADA and 504. *Doe 1 v. Upper St. Clair Sch. Dist.*, 581 F. Supp. 3d 711 (W.D. Pa. 2022), vacated and remanded, 22-1141, 2022 WL 2951467 (3d Cir. Mar. 1, 2022).[5] This Court found that the gravamen of parents' complaint stemmed from the allegation that the district's mask optional policy prevented their immuno-compromised student's from accessing the school buildings thereby denying them equal access to in-person education. *Id.* at 728-729. Additionally, this Court found the plaintiffs' complaint to stem not merely from a lack of access to school buildings, but from a deprivation of the educational experience inherent in in-person education. *Id.* at 729. Accordingly, this Court found the answer to both hypothetical questions posed by the *Fry* test to be "no" because such claims for a failure to provide access to an in-person educational experience could not have been brought against a different public institution which does not provide an educational experience and could not have been brought by an adult at the school because they could not bring a claim for failure to provide access to an educational experience. *Id.* at 728-730.

This Court has also found that claims brought pursuant to Section 1983, which are actually FAPE-based claims, are subject to the IDEA's administrative remedies. *D.C. v. Pittsburgh Pub.*

---

[5] This Opinion was vacated and remanded by the Third Circuit on the basis of mootness. This Court's reasoning regarding the application of plaintiffs' claims under the *Fry* test was not specifically overturned.

*Schools*, 415 F. Supp. 3d 636, 654-655 (W.D. Pa. 2019).

Similar to the plaintiffs in *Upper St. Clair*, Plaintiff's claims stem from the Defendants' alleged failure to provide J.W. with access to the benefits of in-person education. Additionally, Plaintiff alleges that the District did not provide J.W. with access to a tutor. As provided in the *Upper St. Clair* decision, such claims may only be brought against a school district on behalf of a student. Accordingly, the gravamen of all counts of Plaintiff's Complaint stem from a denial of FAPE which requires administrative exhaustion under the IDEA. Plaintiff has failed to exhaust these claims under these administrative remedies. As a result, Plaintiff's Complaint must be dismissed.

## C.  PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DR. HADLEY AND THE SCHOOL BOARD DIRECTOR DEFENDANTS ON ALL COUNTS.

Plaintiff has brought each count of the Complaint against all of the Defendants collectively, including Superintendent Dr. Jeff Hadley ("Dr. Hadley") and School Directors Yu-Ling Cheng-Behr, Kristin Thompason, Beau Blaser, John Brandt, Vicki Carlson, Danielle White, Kathryn Monti, Patrick Stewart, Amy Tokar, and Sandra Bolain (the "Board Defendants") (collectively "Individual Defendants") in their individual and official capacities. All three counts of the Complaint against Dr. Hadley and the Board Defendants should be dismissed.

### 1.  Plaintiff's Claims Against the Individual Defendants in their "Official Capacity" are Duplicative and Must be Dismissed.

All the averments in the Complaint concerning conduct by Dr. Hadley and the Board Defendants are made in reference to the actions they took in their official capacity as superintendent and school directors. The U.S. Supreme Court has held that a claim against a public official in his or her official capacity "[g]enerally represents another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66,

(1985). Recognizing this, the Courts in this District have found that such official capacity claims, when there are identical claims made public body, pursuant to 42. U.S.C. § 1983, "[u]nnecessarily clutter a case and are likely to be confusing to a jury." *Hordych v. Borough of N. E.*, 2010 WL 1707735, at *8 (W.D. Pa. Apr. 27, 2010). This practice has been approved by the Third Circuit. See *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming District Court's dismissal of claims against officers in their official capacities finding such claims redundant where their public entity employer was also sued).

Plaintiff asserts claims against Dr. Hadley and the Board Defendants in their respective official capacities as the superintendent and elected school directors of the Avonworth School District. These claims are duplicative of those brought against the District and should therefore be dismissed.

**2. The School Board Director Defendants and Dr. Hadley have Legislative and/or Judicial Immunity from Plaintiffs' Claim of First Amendment Retaliation under 42 U.S.C. § 1983 and Retaliation under the ADA and Section 504.**

In his Complaint, Plaintiff makes only four factual averments concerning the actions taken by the Board Defendants, alleging that they: (1) voted on August 9, 2021 to require all District students to wear masks in order to enter school buildings; (2) voted on February 7, 2022 to amend the District's masking policy to make masking optional for students during after school activities; (3) held a hearing to determine whether Plaintiff's children resided in the District on February 8, 2022; and (4) voted on February 14, 2022 to find that Plaintiff failed to prove that his children resided in the District. To the extent that Plaintiff alleges that these actions constitute civil rights violations under 42 U.S.C. § 1983, the ADA and Section 504, such claims against the Board Defendants are barred by absolute legislative and judicial immunity. As Plaintiff has not alleged

that the Board Defendants personally took any other actions, Counts I and III of the Complaint against them must be dismissed.

Plaintiff has only made one factual averment in the Complaint regarding the individual conduct of Dr. Hadley. Plaintiff alleges that Dr. Hadley attended a meeting on January 6, 2022, where the disputed residency status of Plaintiff's children was discussed. It is unclear how Plaintiff is construing this conduct as First Amendment Retaliation or ADA/Section 504 Retaliation. In construing the facts plead in the light most favorable to Plaintiff, and assuming that he is implying that Dr. Hadley's role in the investigation and adjudication of his children was retaliatory, such a claim would be barred by judicial immunity for reasons provided below. Accordingly, Counts I and III of the Complaint against Dr. Hadley must be dismissed.

### Legislative Immunity

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Another Court in this District has recently held that school board members were "acting as local legislators to the District" when they voted to adjust their school masking policy and were thus entitled to absolute legislative immunity, as the plaintiffs could not prove that their actions violated a clearly established statutory or constitutional right. *B.P. by and through L.P. v. N. Allegheny Sch. Dist*., 579 F. Supp. 3d 713, 731 (W.D. Pa. 2022).  In its opinion, the Court held that the debate surrounding mandatory school masking policies in response to the COVID-19 pandemic debate was "complex" and that a school district's decision to modify its masking policies did not violate any clearly established constitutional or statutory rights. *Id.*

As such, the Board Defendants' votes to adopt and later curtail the District's mandatory masking policy referenced above were a matter of legislative discretion entitled to absolute immunity.

### Judicial Immunity- Board Defendants

To the extent that Plaintiff alleges that the Board Defendants have personal liability for First Amendment retaliation and ADA/Section 504 retaliation for holding a hearing to determine whether his children resided in the District, such claims are barred by absolute judicial immunity. Judges of courts of record of are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly. *Bradley v. Fisher*, 80 U.S. 335, 336 (1871).

The principle of absolute judicial immunity has been extended to government actors performing adjudicative functions. "Judges have absolute immunity not because of their particular location within government, but because of the special nature of their responsibilities." *Butz v. Economou*, 438 U.S. 478, 511 (1978). The protection of absolute judicial immunity is not conditioned upon the title or rank of the individual presiding over a proceeding, but by whether the proceeding shares the characteristics of the judicial process, such as "[t]he insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal." *Id* at 512.

The Third Circuit has applied *Butz* to find that members of a Pennsylvania township's board of supervisors were entitled to quasi-judicial absolute immunity, in their individual capacities, in a § 1983 suit alleging due process violations arising out of denial of permit application. *Dotzel v. Ashbridge*, 438 F.3d 320 (3d Cir. 2006). "Regardless of his job title, if a state official must walk, talk, and act like a judge as part of his job, then he is as absolutely immune from lawsuits arising

out of that walking, talking, and acting as are judges who enjoy the title and other formal indicia of office." *Id* at 325.

In *Dotzel*, the Third Circuit held that the factors which determine whether a public official's role is functionally comparable to that of judge, thereby entitling him to quasi-judicial immunity, include: (1) whether official performs traditional adjudicatory function, in that he decides facts, applies law, and otherwise resolves disputes on the merits; (2) whether official decides cases sufficiently controversial that in absence of absolute immunity, he would be subject to numerous damages actions; and (3) whether official adjudicates disputes against backdrop of multiple safeguards designed to protect parties' constitutional rights. *Id*. Each of these factors is present at an adjudicatory hearing before a school board to determine whether students reside in the district such that they are entitled to free attendance pursuant to 24 P.S. § 13-1302.

The Commonwealth Court has held that school boards perform an adjudicative function as the factfinder in residency hearings. *Behm v. Wilmington Area Sch. Dist.*, 996 A.2d 60, 64-65 (Pa. Cmmw. 2010). Such hearings are subject to numerous procedural safeguards, including notice, the right to be represented by counsel, the right to cross examine witnesses and present evidence, a requirement that a written or audio record of the hearing be kept, the requirement that the board's decision be provided in writing and the right of the student to appeal an adverse result. 22 Pa. Code § 12.8; 2 Pa.C.S.A. § 551-555. Plaintiff acknowledges in his brief that he has availed himself of these procedural safeguards. As such, the Board Defendants have absolute judicial immunity under 42 U.S.C. § 1983 for their role in the adjudication of the residency status of Plaintiff's children. As Plaintiff has not alleged any other individual conduct on the part of the Board Defendants which could be construed as retaliatory, Counts I and III of the Complaint against the Board Defendants must be dismissed.

**Judicial Immunity- Dr. Hadley**

The U.S. Supreme Court has extended judicial immunity to prosecutors, as well as officials serving a prosecutorial function. *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976)." [O]fficials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Butz v. Economou* at 515.

In his participation in the investigation and adjudication of the residency status of Plaintiff's children, Dr. Hadley acted in a role similar to that of a prosecutor in a criminal case. Pennsylvania courts have acknowledged that school district administrators perform a "prosecutorial function" in student residency hearings adjudicated before the board of school directors. *Behm v. Wilmington Area Sch. Dist.* at 61. To the extent that Plaintiff alleges that Dr. Hadley engaged in retaliatory conduct by virtue of participation in the investigation and adjudication of his children's residency, Dr. Hadley has absolute immunity from such claims. Accordingly, Counts I and III of the Complaint against Dr. Hadley must be dismissed.

   3. **Dr. Hadley and the Board Defendants Cannot be Held Individually Liable for Discrimination in Violation of the ADA and Section 504.**

"Section 202 of the ADA prohibits discrimination against the disabled by public entities; § 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding." *Barnes v. Gorman*, 536 U.S. 181, 184–85 (2002). As neither Dr. Hadley nor the Board Defendants are public entities or recipients of federal funding, Count II of the Complaint against them must be dismissed.

**Individual Liability for School Officials Under the ADA and Section 504**

The remedies for violations of Title II of the ADA and Section 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI. *Id.* The U.S. Supreme Court has held that "it is thus beyond dispute that private individuals may sue to enforce" Title VI. *Alexander v. Sandoval,* 532 U.S. 275, 280 (2001). Title VI, along with the ADA and Section 504, is legislation enacted pursuant to the Spending Clause of the United States Constitution. When Congress acts pursuant to its spending power, it generates legislation much in the nature of a contract: in return for federal funds, the recipients agree to comply with federally imposed conditions. *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ*., 526 U.S. 629 (1999).

Title VI's prohibition against discrimination in a program or activity which receives federal funds invokes Congress's power under the Spending Clause to place conditions on the grant of federal funds. *Barnes v. Gorman* at 185-186. As they do not receive federal funds, Dr. Hadley and the Board Defendants cannot be held individually liable for any discrimination alleged to have occurred in violation of the ADA and Section 504. *Emerson v. Thiel College*, 296 F.3d 184, 188 (3d Cir. 2002) (Former president, vice president of academic affairs, members of faculty and staff, and outside legal counsel, as individuals associated with college, could not be liable under the Americans with Disabilities Act (ADA) that prohibited discrimination in places of public accommodation); *A.W. v. Jersey City Pub. Schools*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"). Further, because the "remedies and procedures" available to aggrieved persons for retaliatory acts under Title II of the ADA and Section 504 are the same as those for the violations of those authorities, school officials are not subject to suit under those authorities.

Accordingly, Counts II and III of the Complaint against Dr. Hadley and the School Board Director Defendants should be dismissed.

<b>Individual Liability Under 42 U.S.C. § 1983<br>for Discrimination in Violation of the ADA and Section 504</b>

Plaintiff brings his claims for violation of the ADA and Section 504 under 42 U.S.C. § 1983. The U.S. Supreme Court has held that "the provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005).

The Third Circuit has held that "[t]here is nothing in Section 504 that undercuts this inference or causes us to conclude that Congress intended to allow § 1983 to be available to remedy Section 504 violations." *A.W. v. Jersey City Pub. Schools* at 805. Other Courts in this District have determined that the Third Circuit's analysis set forth in *A.W. v. Jersey City Pub. Schools* "controls the question of § 1983 liability under Title II of the ADA, thereby precluding reliance on § 1983 as a basis for remedying violations of Title II." *Taylor v. Altoona Area Sch. Dist.*, 513 F. Supp. 2d 540, 563 (W.D. Pa. 2007).

As Plaintiff cannot bring suit against Dr. Hadley and the Board Defendants in their individual capacities for discrimination in violation of the ADA and Section 504, he cannot do so under 42 U.S.C. § 1983. As such, Count II of the Complaint against Dr. Hadley and the School Board Director Defendants must be dismissed.

**4. THE DISTRICT AND INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE IMMUNE FROM CLAIMS FOR PUNITIVE DAMAGES.**

Plaintiff seeks punitive damages against Defendants pursuant to all counts of the Complaint. As a matter of public policy, punitive damages are not recoverable against a

municipality in Pennsylvania. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981); Feingold v. SEPTA, 517 A.2d 1270, 1277 (Pa. 1986). A school district is considered a local agency under the PPSTCA, and therefore punitive damages are not recoverable against the District. *Doe by Brown v. Harrisburg Sch. Dist.*, 1:19-CV-1027, 2020 WL 4584372, at *6 (M.D. Pa. Aug. 10, 2020). Additionally, complaints against a public official in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978). Accordingly, Plaintiff's claims for punitive damages against the District and the Individual Defendants in their official capacity must be dismissed.

5. **PLAINTIFF HAS NO VIABLE CLAIM THAT HIS CHILDREN HAVE A RIGHT TO IN-PERSON EDUCATION, AS NO SUCH RIGHT IS RECOGNIZED UNDER FEDERAL OR STATE LAW**

As provided above, Plaintiff bases his retaliation claims under Counts I and III on the allegation that the Defendants segregated J.W. into online learning. Additionally, Plaintiff bases his ADA discrimination claim under Count II on the allegation that J.W. was deprived of the "right to attend and participate in all in-person educational opportunities offered by the school.".

The right of either parents or children to in-person education has not been declared in the Commonwealth of Pennsylvania. *Open PA Schools v. Dept. of Educ.*, 280 A.3d 343 (Pa. Cmmw. 2022). Furthermore, after thorough examination, Defendants are not aware of any federal case law which establishes in-person education as a federal right. As a result, Plaintiff is unable to base their claims on a failure of the District to specifically provide in-person education as opposed to online learning. To the extent that Plaintiff bases his claims on a right to in-person education, such claims must be dismissed.

6.   **PLAINTIFF IS NOT ENTITLED TO LIQUIDATED DAMAGES.**

Plaintiff seeks liquidated damages against Defendants pursuant to all counts of the Complaint. "Liquidated damages" is a term of art derived from contract law; it denotes "'the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable ... if the breach occurs.'" *In re Plywood Co. of Pa.*, 425 F.2d 151, 154 (3d Cir.1970) (quoting *Westmount Country Club v. Kameny*, 82 N.J. Super. 200, 197 A.2d 379, 382 (1964).

In the employment law context, liquidated damages are a statutory remedy for victims of certain unlawful employment discrimination or wage violations. Liquidated damages are a fixed amount defined by the statutes that authorize them, commonly equal to a Plaintiff's back pay award.  Liquidated damages in this context are sometimes referred to as double damages.  The federal employment statutes that expressly authorize liquidated damages as an available remedy include the: 1) Age Discrimination in Employment Act; 2) Equal Pay Act; 3) Fair Labor Standards Act; 4) Family and Medical Leave Act; and 5) Uniformed Service Employment and Reemployment Rights Act (USERRA).  Liquidated damages are not recoverable for claims sounding in First Amendment retaliation, disability discrimination under the ADA, or Section 504 and ADA retaliation.  As such, Plaintiff's claims for liquidated damages must be dismissed.

7.   **PLAINTIFF IS NOT ENTITLED TO RECOVERY OF ATTORNEY'S FEES RELATED TO THE DISTRICT'S CONDUCT OF A RESIDENCY HEARING (OR APPEALS RELATED THERETO).**

The residency hearing to which Plaintiff refers in Paragraphs 55 through 71 of Plaintiff's Complaint involved an appeal by Plaintiff, pursuant to the Local Agency Law (2 Pa.C.S. §§ 751, et seq.), of a February 14, 2022 Adjudication of the District, finding that Plaintiff's son, G.W., did

not reside within the School District with his father, and he was therefore not entitled to a free and public education through the District in accordance with Section 1301 of the Pennsylvania Public School Code of 1949 (24 P.S. §13-1301).

The Local Agency Law was enacted to provide a forum for the enforcement of statutory rights where no procedure otherwise exists.  *Bray v. McKeesport Housing Authority*, 114 Pa. Super. 442, 453-54 (Pa. Commw. 2015).  There is no allegation in Plaintiff's Complaint that the District's conduct of the residency hearing was procedurally flawed, or that the District was not permitted to challenge the residency of Plaintiff's children under the Pennsylvania Public School Code.

As it was entitled to do, the District argued in the Court of Common Pleas that its findings of fact at the Local Agency level were conclusive on appeal so long as the record contained relevant evidence upon which a reasonable mind could base such a conclusion.  The Court found that the District's evidence was not substantial enough to prevail on the residency issue.  The Court did not find that the District provided no evidence, or that the District somehow acted in bad faith. There was no award of attorney's fees to Plaintiff in the underlying Court of Common Pleas case. In fact, an award of attorney's fees is not authorized under the Local Agency Law.  The Common Pleas Court's decision remains interlocutory, given the District's appeal to Pennsylvania Commonwealth Court.

In the instant action, Plaintiff attempts to bootstrap an unrecoverable claim for attorney's fees and costs in the state court proceeding to the instant lawsuit, by asserting that his attorney's fees are recoverable as part of his First Amendment retaliation claim.  Such efforts to re-purpose a non-existent right of recovery in the first instance is not permissible.

28

**IV.**    <u>**CONCLUSION**</u>

      For the reasons set forth above, the Defendants respectfully requests that the Court find that Plaintiff has failed to state a claim for which relief can be granted with respect to all counts of Plaintiff's Complaint. Accordingly, Plaintiff's Complaint must be dismissed with prejudice.

      In the alternative, the District respectfully requests that the Court find that: 1) Plaintiff has failed to state a claim for which relief can be granted with respect to any claims against the Individual Defendants; 2) Plaintiff has failed to state a claim for which relief can be granted based on an alleged violation of a right to in-person education; 3) Plaintiff has failed to state a claim for punitive damages against any of the Defendants; 3) Plaintiff has failed to state a claim for liquidated damages against any of the Defendants; 4) Plaintiff has failed to state a claim for recovery of attorney's fees related to the District's conduct of a residency hearing under PA Local Agency Law (and appeals related thereto).

                Respectfully submitted,

                **ANDREWS & PRICE**

            By:   <u>/s/ Joseph W. Cavrich</u>
                Joseph W. Cavrich, Esq.
                P.A. I.D. No. 52693

                1500 Ardmore Boulevard, Suite 506
                Pittsburgh, PA  15221
                (412) 243-9700
                Attorneys for the Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

/s/ Joseph W. Cavrich
Joseph W. Cavrich