**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HARRY WYNKOOP, individually and on behalf of his minor children J.W. and G.W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 22-814 |
| | ) | |
| AVONWORTH SCHOOL DISTRICT, et al., | ) | Magistrate Judge Dodge |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.  Recommendation**

It is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 13) be granted in part and denied in part.

**II.  Report**

Plaintiff Harry Wynkoop, individually and on behalf of his minor children, J.W. and G.W., brings this civil rights action against the Avonworth School District (the "District"), Superintendent Jeff Hadley and the members of the district's School Board (Yu-Ling Cheng-Behr, Kristin Thompason, Beau Blaser, John Brandt, Vicki Carlson, Danielle White, Kathryn Monti, Patrick Stewart and Amy Tokar, along with former Board member Sandra Bolain) ("School Board"). This action arises out of the School District's enactment of a required masking policy for its schools in response to the COVID-19 pandemic, a measure against which Wynkoop protested.

The Amended Complaint[1] raises claims of retaliation in violation of the First Amendment to the United States Constitution, the Americans With Disabilities Act, 42 U.S.C. § 12203 (ADA),

---

[1] Plaintiff filed an amended complaint on December 12, 2022 (ECF No. 10). Although its title is "Complaint," it is the operative document and will be referenced herein as "Amended Complaint."

and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); 34 C.F.R. § 100.7(e) (Section 504). The Amended Complaint further asserts a claim that Defendants failed to accommodate J.W.'s disability, in violation of Title II of the ADA, 42 U.S.C. §§ 12131-12134.

Pending before the Court is Defendants' motion to dismiss.

### A.  **Procedural History**

Plaintiff commenced this action in May 2022 and later amended his complaint in December 2022 (ECF No. 10). Count I, which is brought under 42 U.S.C. § 1983, alleges that Defendants retaliated against Wynkoop for exercising his rights under the First Amendment by refusing to honor medical exemptions from masking requirements for his children, J.W. and G.W.,[2] segregating J.W. to online learning, and failing to provide J.W. with a tutor. Count I also asserts that Defendants demanded that Wynkoop disenroll J.W. and G.W. without any evidence that they did not reside within the District, selectively investigated their residency and publicly disseminated personally identifiable information about them. In Count II, Plaintiff claims that in violation of the ADA, Defendants refused to make a reasonable accommodation for J.W.'s disability. Finally, Count III alleges that Defendants retaliated against Wynkoop and his family for his protected conduct in violation of both the ADA and Section 504 of the Rehabilitation Act.

Defendants subsequently filed a motion to dismiss (ECF No. 13) which has been fully briefed (ECF Nos. 14, 20). Oral argument was held on July 20, 2023.

### B.  **Relevant Background Facts**

The Pennsylvania Office of the Governor declared a disaster on March 6, 2020 in response

---

[2] While Count I alleges that Defendants retaliated against both J.W. and G.W., the factual allegations of the Amended Complaint only identify J.W. as having presented a medical exemption from masking that Defendants refused to honor.

to fear of the spread of COVID-19. (Am. Compl. ¶ 20.) On June 10, 2021, the Pennsylvania General Assembly passed a resolution that ended the Governor's disaster emergency. (*Id.* ¶ 21.) Upon the termination of the Governor's disaster emergency, school districts in Pennsylvania, including the Avonworth School District, evaluated whether to require students to wear masks at the start of the 2021-2022 school year. (*Id.* ¶ 22.)

At a School Board meeting on August 2, 2021, the Board discussed whether to require all students to wear masks in order to enter school buildings. (Am. Compl.¶ 23.) Plaintiff attended the meeting in order to oppose forced masking. (*Id.* ¶ 24.) During a subsequent meeting, the Board voted to "force all students to wear masks in order to enter school buildings." (*Id.* ¶ 25.)

On August 16, 2021, then-Board member Bolain emailed Board President Carlson to inquire whether Plaintiff's children resided within the District and asked whether a protest in which Plaintiff was slated to participate could "be stopped." (Am. Compl. ¶ 26 & Ex. A.) On the same date, Plaintiff attended another meeting of the Board to express his opposition to forced masking. (*Id.* ¶ 27.) Several days later, Plaintiff held an opposition rally at the Ohio Township Community Park regarding Defendants' forced masking plan. (*Id.* ¶ 28.)

Thereafter, on August 31, 2021, the Pennsylvania Secretary of Health issued an Order that "purported to require all schools within the Commonwealth to force students to wear face coverings, unless 'wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability.'" (Am. Compl. ¶ 29.) The Secretary's Order also provided that school must: "Provide reasonable accommodations for individuals who state they have a medical condition, mental health condition, or disability that makes it unreasonable for the person to maintain a face covering." (*Id.* ¶ 30.)

Plaintiff had J.W. and G.W. evaluated by Dr. Michael Daly, a licensed medical doctor, for the purpose of obtaining a medical exemption from the mask requirement.[3] (Am. Compl. ¶ 31.) According to Plaintiff, Dr. Daly determined that due to J.W.'s asthma condition, J.W. qualified for a medical exemption. (*Id.* ¶ 32 & Ex. B.) Plaintiff submitted this statement to the District, but it refused to honor the medical exemption. (*Id.* ¶¶ 33-34.) Later, on November 17, 2021, Plaintiff submitted a medical exemption note from Dr. William C. Churma, who opined that "wearing a mask may activate [J.W.'s] breathing disorder." (*Id.* ¶ 35 & Ex. C.) Another medical exemption was submitted on December 17, 2021 from William P. Mueller, M.D., who stated that J.W. "has valid medical reasons to be exempted from wearing a mask and/or face shield while attending school and/or any school functions." (*Id.* ¶ 36 & Ex. D.) On February 14, 2022, Plaintiff submitted a statement from Dr. Lisa Hwang, MD who advised that J.W. "has been a patient of [Caring Hands Pediatrics] since 3/30/2017" and that J.W. has been diagnosed with asthma and has been treated for "asthma exacerbations several times." (*Id.* ¶ 37 & Ex. E.)

Plaintiff alleges that as a result of the District's refusal to honor medical exemptions for J.W., she was segregated from her peers and forced to endure virtual learning. (Am. Compl. ¶ 38.) As a result, J.W.'s grades slipped dramatically. (*Id.* ¶ 39.) While the District has provided tutors for other students in the District in virtual learning programs and promised to provide a tutor for J.W., it never did so. (*Id.* ¶¶ 40-41.)

---

[3] Although Plaintiff alleges that this evaluation was "in accordance with" the Secretary's August 31, 2021 order, Dr. Daly's note, which is attached to the Amended Complaint as Exhibit B, is dated April 6, 2021. Dr. Daly states in his note that J.W. should not wear a mask while playing soccer as it may trigger and aggravate her asthma symptoms. He does not reference G.W.

There are no allegations in the Amended Complaint that G.W. had medical exemptions, was segregated from his peers or was required to engage in virtual learning. At oral argument, counsel conceded that G.W. does not have a medical condition but that he opted not to wear a mask out of "solidarity" with his sister.

Plaintiff participated in circulating a petition to the District asking Defendants to revoke the forced masking policy (Am. Compl. ¶ 42) and held additional rallies in August and September 2021 at the Ohio Township Community Park opposing Defendants' forced masking plan. (*Id.* ¶¶ 43-44). Plaintiff also attended a Board meeting on September 13, 2021, where he again expressed his opposition to the District's masking plan. (*Id.* ¶ 45.) Thereafter, Plaintiff alleges, the District publicly disseminated in an email personally identifiable information regarding Plaintiff, Plaintiff's wife, and the identity of J.W. (*Id.* ¶¶ 46-47.)

On November 11, 2021, the District, through its legal counsel, sent a letter to Plaintiff falsely alleging that his minor children reside outside of the District and demanding that Plaintiff disenroll J.W. and G.W. from the District no later than November 23, 2021. This correspondence also threatened Plaintiff with the possibility of being forced to pay "the value of back tuition" for all of the time that his children were improperly enrolled in the District. (Am. Compl. ¶ 48 & Ex. F.) The District originally scheduled a hearing regarding G.W.'s residency on December 14, 2021; however, due to scheduling conflicts, the hearing was postponed. (*Id.* ¶ 51.)

On December 10, 2021, the Pennsylvania Supreme Court declared the Secretary of Health's masking order void. *Corman v. Acting Secretary of Pa. Dep't of Health*, 268 A.3d 1080 (Pa. 2021). (Am. Compl. ¶ 74.) The District then voted on December 17, 2021, to make masks optional during after-school events but continued to require students to wear masks in order to enter school buildings during the day. (*Id.* ¶ 73.)

Plaintiff attended a meeting on January 6, 2022, with Superintendent Hadley, Elementary School Principal Bill Battistone, a member of Section 504 team, and the District's counsel, to discuss the letter sent to him regarding his children's residency. During the meeting, counsel for the District admitted that it had no evidence that J.W. resided outside the District. (Am. Compl. ¶¶ 49-50.)

Beginning in early January, 2022, Plaintiff was frequently critical of the District's masking policy on his radio program and on social media. (Am. Compl. ¶ 52.) On January 31, 2022, Plaintiff emailed Superintendent Hadley to inquire whether he had any comment regarding the dichotomy of requiring students to wear masks during school hours but allowing student and others to attend a wrestling tournament without masks that had occurred over the weekend. (*Id.* ¶¶ 53-54.) Hours after this email was sent, the District's counsel scheduled a residency hearing for G.W. (*Id.* ¶ 55.)

The hearing was held on February 8, 2022, regarding the residency of J.W. and G.W. (Am. Compl. ¶ 56.)[4] During the hearing, the District revealed that it had hired a private investigator to conduct surveillance of Plaintiff's children. (*Id.* ¶ 57.)

On February 14, 2022, the District found that Plaintiff failed to establish that G.W. resides within the District. (Am. Compl. ¶ 58.) The Amended Complaint makes no reference to any finding by the District regarding J.W. Plaintiff alleges that the District's decision was erroneous because it relied on flawed evidentiary grounds and was contrary to Pennsylvania law. (*Id.* ¶ 61.) According to Plaintiff, the District's intent was to retaliate against him because of his critical comments of

---

[4] The Complaint includes inconsistent allegations about whether the District's actions involved both G.W. and J.W., but the Order from the Court of Common Pleas that is attached to the Complaint only references G.W. in both the caption and in its substance. The same is true of the Commonwealth Court's opinion, as discussed below.

the District and School Board. (*Id.* ¶ 66.)

Plaintiff appealed the District's decision to the Allegheny County Court of Common Pleas. (Am. Compl. ¶ 58.) The Court of Common Pleas entered an order sustaining Plaintiff's statutory appeal. (*Id.* ¶ 59 & Ex. G.) The District appealed this order to the Pennsylvania Commonwealth Court. (*Id.* ¶ 70.)[5]

On March 7, 2022, the District revised its policy, resulting in masks being optional for K-12 staff, students and visitors during the school day and for all evening activities. (ECF No. 14 Exs. A, B.) While the Amended Complaint alleges that the District continued to require all students to wear masks in order to enter school buildings, thereby preventing J.W. from entering school buildings because of her disability (Am. Compl. ¶ 75), counsel conceded at oral argument that the District no longer has a masking requirement.

**C.   Discussion**

1.   Standard of Review

One of the arguments raised by Defendants in their motion to dismiss is that most of the claims asserted by Plaintiff are moot. Under Rule 12(b)(1),[6] dismissal "is appropriate when the District Court lacks jurisdiction over the subject matter of the case. Fed. R. Civ. P. 12(b)(1). The

---

[5] During oral argument, counsel indicated that the parties agreed to stay any disenrollment while the matter was under judicial review. Thus, neither G.W. nor J.W. was ever forced to attend another school district. The Pennsylvania Commonwealth Court recently affirmed the decision of the Court of Common Pleas. *See G.W. by H.W. v. Avonworth Sch. Dist.*, No. 1199 C.D. 2022, 2023 WL 3767984 (Pa. Commw. June 2, 2023). The Commonwealth Court decision confirms that the District moved to disenroll only G.W. and that the parties stipulated that G.W. would continue to attend school in the District pending resolution of the appeal.

[6] Defendants cite only Rule 12(b)(6) but as discussed in the text, mootness raises a subject matter jurisdiction issue and should be addressed under Rule(b)(1).

District Court lacks subject matter jurisdiction when the controversy has become moot." *Goodmann v. People's Bank*, 209 F. App'x 111, 113 (3d Cir. 2006).

The first issue a court must decide in reviewing a Rule 12(b)(1) motion is whether the challenge to the court's subject matter jurisdiction is a facial or factual attack. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (footnote and citations omitted). "Facial attacks ... contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citation omitted).

Therefore, as it relates to the issue of mootness, Defendants' motion will be treated as a factual attack upon the Court's subject matter jurisdiction.

Other issues raised in the motion to dismiss relate to Defendants' contention that the Amended Complaint fails to state a claim upon which relief may be granted. Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 291 (3d Cir. 2014). Defendants have attached to the motion to dismiss two exhibits: notes of a March 7, 2022 Board meeting and updated school guidelines (ECF No. 14 Exs. A, B.) Although Plaintiff does not admit the authenticity or content of these documents—which indicate that the School District changed its masking policy as of March 7, 2022—he does not dispute these issues either. Thus, they may be considered without converting the motion into a motion for summary judgment.

### 2. Mootness

Defendants contend that most of Plaintiff's claims are moot because the masking mandate order issued by the Acting Secretary of Health is no longer in effect and the District revised its mask policy such that they are no longer required.

"It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." *Decker v. Northwest Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) (quotation omitted). "A case becomes moot only when it is

impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quoting

*Knox v. Service Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). "[A]s long as the parties

have a concrete interest, however small, in the outcome of the litigation, the case is not moot."

*Knox*, 567 U.S. at 307-08.

The Supreme Court addressed the issue of whether a party's voluntary cessation of conduct

renders a case moot, holding that:

> It is well settled that "a defendant's voluntary cessation of a challenged practice
> does not deprive a federal court of its power to determine the legality of the
> practice." *City of Mesquite* [*v. Aladdin's Castle, Inc.*], 455 U.S. [283,] 289, 102
> S.Ct. 1070 [(1983)]. "[I]f it did, the courts would be compelled to leave '[t]he
> defendant ... free to return to his old ways.'" *Id.*, at 289, n.10, 102 S.Ct. 1070 (citing
> *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303
> (1953)). In accordance with this principle, the standard we have announced for
> determining whether a case has been mooted by the defendant's voluntary conduct
> is stringent: "A case might become moot if subsequent events made it absolutely
> clear that the allegedly wrongful behavior could not reasonably be expected to
> recur." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203,
> 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). The "heavy burden of persua[ding]" the court
> that the challenged conduct cannot reasonably be expected to start up again lies
> with the party asserting mootness. *Ibid.*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Further,

as noted the Court of Appeals for the Third Circuit, "[w]hile the case law speaks largely of

voluntary cessation, these principles apply even when the defendant's cessation is not entirely

voluntary" and the "burden always lies on the party claiming mootness, whether the case involves

voluntary cessation or not." *Hartnett v. Pennsylvania State Educ. Ass'n,* 963 F.3d 301, 306, 307

(3d Cir. 2020).

In *County of Butler v. Governor of Pennsylvania*, 8 F.4th 226 (3d Cir. 2021), *cert. denied*

*sub nom. Butler County v. Wolf*, 142 S. Ct. 772 (2022), the petitioners sought a declaratory

judgment regarding emergency measures implemented between March and July 2020 by then-

Governor Wolf and the Pennsylvania Secretary of Health in response to the COVID-19 pandemic. By the time the Third Circuit heard an appeal on the matter, however, the underlying facts and law had changed because the General Assembly restricted the Governor's authority to enter such orders and they had also expired by their own terms. *Id.* at 230. The Third Circuit held that the matter was moot, that the voluntary cessation doctrine did not apply because the orders expired by their own terms and the "capable of repetition yet evading review" exception to mootness did not apply. *Id.* at 230-31. *See also R.M. v. Ortega*, 2022 WL 17347632, at *6-7 (Pa. Commw. Dec. 1, 2022) (similar case regarding masking requirements was mooted by same events described in *County of Butler*).

Here, Plaintiff contends that he is not challenging the mask mandates that have expired. Rather, he is arguing that Defendants retaliated against him and his children for challenging the masking policy in various respects, and that his claims of retaliation are not affected by the status of the masking policy.

Plaintiff further argues that Defendants have mischaracterized his claims in another respect. He is not claiming that the District refuses to honor medical exemptions from masking requirements; rather, he asserts, the District retaliated against him by refusing to honor medical exemptions for J.W. He claims that the relief he seeks relates to the retaliatory conduct of segregating J.W. to online learning without a tutor, not J.W.'s resulting anxiety or failing grades.[7] In addition, he argues that the claims in Counts II and III are not moot because he is seeking

---

[7] Notably, however, as a review of the Amended Complaint reveals, Plaintiff specifically alleges that J.W. has been harmed as a result of Defendants' retaliation by experiencing increased anxiety and that her grades have "dramatically fallen." (Am. Compl. ¶ 76.) Although somewhat unclear, it appears that Plaintiff is seeking compensatory damages for the harm allegedly experienced by J.W. At oral argument, Plaintiff contended that the harm to him personally includes the cost of hiring counsel to litigate this matter and oppose the District's retaliatory conduct.

damages, not injunctive relief, because of Defendants' failure to accommodate J.W.'s disability and their retaliatory conduct in violation of the ADA and Section 504.

A review of the Amended Complaint demonstrates that Plaintiff does not challenge the District's former masking policies but rather, seeks relief based upon Defendants' alleged acts of retaliation for Plaintiff's protests about the masking policy. Because Plaintiff alleges that both he and his children are entitled to compensatory damages as a result of retaliation, these claims are not moot.[8]

### 3. Exhaustion of Remedies

Defendants assert that Plaintiff's claims should be dismissed for failure to exhaust administrative remedies. Both parties agree that claims asserted under § 1983, the ADA and Section 504 do not have exhaustion requirements. Thus, the issue turns on whether, as Defendants suggest, Plaintiff's claim is actually one under the Individual with Disabilities Education Act, 20 U.S.C. §§ 1400-82 ("IDEA"). If so, the IDEA's exhaustion requirements are relevant to the disposition of this issue.

The IDEA provides that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter**.

20 U.S.C. § 1415(*l*) (emphasis supplied). The Supreme Court has held that this language "compels

---

[8] Thus, the Court need not address the alternative arguments about the voluntary cessation and "capable of repetition yet evading review" exceptions to mootness.

exhaustion when a plaintiff seeks 'relief' that is 'available' under the IDEA." *Fry v. Napoleon Community Schools*, 580 U.S. 154, 166 (2017). Resolution of this issue turns on whether the gravamen of the plaintiff's suit involves the denial of the IDEA's core guarantee, a free appropriate public education ("FAPE"). *Id.*

> In *Fry,* the Supreme Court asked two hypothetical questions that are key to this analysis:
>
> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor— have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 171. Defendants contend that both of these questions must be answered "no." Among other arguments, they rely on *Doe I v. Upper St. Clair School District*, 581 F. Supp. 3d 711, 726-28 (W.D. Pa. 2022) (Stickman, J.).[9] In *Doe,* the court found that claims arising from a school district's mask-optional policy—which parents alleged denied their immuno-compromised child access to school buildings and a deprivation of an in-person educational experience—could not have been brought against a different public institution which did not provide an educational experience and could not have been brought by an adult at the school who would not have been seeking an educational experience. They contend that the same result obtains here. *But see Doe 1 v. North Allegheny Sch. Dist.*, 580 F. Supp. 3d 140, 149 (W.D. Pa. 2022) (Horan, J.) (reaching the opposite

---

[9] Defendants acknowledge that the opinion was vacated and remanded on appeal based on mootness, 2022 WL 2951467 (3d Cir. Mar. 1, 2022), but contend that this does not affect the district court's reasoning with respect to the exhaustion issue.

conclusion, namely that the immuno-compromised students would not need to show an exhaustion of administrative remedies because the circumstances of the claim would be the same regardless of whether or not the facility was a public school and an adult would be similarly affected), *vacated and remanded*, 2022 WL 2951467 (3d Cir. Mar. 1, 2022).

Plaintiff reiterates that he is not challenging the District's implementation of a masking policy, but instead claims that he was retaliated against for protesting against this policy. As such, he contends that the answer to both *Fry* questions is "yes": he could bring the same claim if the retaliatory conduct came from a public library or other governmental entity and any adult could bring the same claims if his or her child was subject to the same treatment as his children. Similarly, with respect to the failure to accommodate claim in Count II, affected persons frequently bring ADA claims against entities other than schools, *see Matheis v. CSL Plasma, Inc.*, 936 F.3d 171 (3d Cir. 2019) (claim involving the denial of access to a facility because the plaintiff had a service animal). Moreover, Plaintiff argues, an adult who wanted to enter a school (for a school board meeting, for example) could just as easily require a medical accommodation from a masking policy. Therefore, he contends that the exhaustion requirements of the IDEA do not apply.

As with their arguments regarding mootness, Defendants' framing of the exhaustion issue is not entirely consistent with the allegations of the Amended Complaint. In Counts I and III, Plaintiff seeks redress for acts of retaliation. Thus, as to these counts, Plaintiff is not seeking a FAPE and the exhaustion requirements of the IDEA do not apply. Therefore, dismissal of Count I and III on this ground should be rejected.[10]

---

[10] Defendants' argument that there is no federal or state right to "in-person" educational opportunities is not relevant to the resolution of the retaliation claims. As Plaintiff notes, his claims turn on whether he was subjected to retaliation that included the District's failure to honor *Footnote continued on next page…*

Count II presents a different issue. As Defendants note, the IDEA guarantees individually tailored education services for children with disabilities. Plaintiff claims that J.W. has a disability. While styled as an ADA claim, Count II alleges that J.W. was deprived of benefits and services to which all students are entitled, including an in-person education. Moreover, her education was, according to Plaintiff, unfair and deficient. Notably, some of the allegations of the Amended Complaint that are incorporated by reference in Count II include Plaintiff's assertion that J.W. was segregated to virtual learning, a tutor was requested for her, the District failed to provide her with a tutor while providing one for other students, and her grades substantially dropped as a result. As it relates to the questions posed in *Fry,* it is evident that the same claim could not have been brought if the alleged conduct had occurred at a public facility other than a school. Moreover, an adult at the school could not have brought such a claim.

At oral argument, counsel suggested for the first time that Plaintiff had raised the issue with the District but there are no allegations in the Amended Complaint that a full IDEA process was engaged. *See* 20 U.S.C. § 1415 (describing procedures for IDEA claims).

For these reasons, the Court concludes that the gravamen of Count II relates to the denial of a free appropriate public education. Since Plaintiff seeks relief for J.W. that is available under the IDEA, he was required to first exhaust administrative remedies before seeking judicial relief. *Fry v. Napoleon Community Schools*, 580 U.S. 154, 166 (2017). Having failed to do so, Count II should be dismissed.

---

J.W.'s medical exemptions and "segregate" her to on-line learning. *See Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) ("Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest.")

4.   Claims Against Individual Defendants

Defendants contend that the claims asserted against the individual defendants should be dismissed for several reasons. First, the claims asserted against these defendants in their official capacities are duplicative of the claims against the District. Additionally, the individual defendants cannot be held liable under the ADA or Section 504. And finally, they have legislative and/or judicial immunity from these claims.

a.   Official capacity claims

The Supreme Court has held that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Suit against both the officers in their official capacities and the agency that employs them "is redundant." *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006). Thus, because Plaintiff has sued the School District under § 1983, his suit against the Superintendent and the individual school board members in their official capacities is redundant and the official capacity claims in Count I against the individual defendants should be dismissed.

On the other hand, the §1983 claim in Count I may be asserted against them in their individual capacities.

b.   Retaliation claim under the ADA and Section 504

Plaintiff also sues the individual defendants under the ADA and Section 504. As the Court of Appeals has held, liability under the ADA and Section 504 does not extend to individuals. *See Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (en banc) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals."); *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 405-06 (M.D. Pa. 2020) ("Individuals are not liable under Title II or

16

the Rehabilitation Act.")

Plaintiff selectively quotes from *Emerson* to suggest that individuals may be liable under the ADA if "they own, lease or operate . . . a place of public accommodation," 296 F.3d at 189. However, the court concluded that the individual defendants, who were the former president, vice president of academic affairs, members of the faculty and staff and outside legal counsel, did not operate a college and were not subject to liability. *Id.* The court noted that: "This result comports with decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively." *Id. See also Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) ("Title II of the ADA does not provide for suits against state officers in their individual capacities.")

As it relates to the Rehabilitation Act, the court in *Emerson* held that "because the individual defendants do not receive federal aid, [the plaintiff] does not state a claim against them under the Rehabilitation Act." 296 F.3d at 190 (footnote omitted). Plaintiff cites several older district court cases from outside the Third Circuit that appear to allow for the possibility of suit against individuals who "are in a position to accept or reject federal assistance," *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 323 (D. Mass. 1997); *Lee v. Trustees of Dartmouth Coll.*, 958 F. Supp. 37, 45 (D.N.H. 1997); *Niece v. Fitzner*, 922 F. Supp. 1208, 1219 (E.D. Mich. 1996). *But see Fitzpatrick v. Pennsylvania Dep't of Transp.*, 40 F. Supp. 2d 631, 638 (E.D. Pa. 1999) (rejecting the reasoning of these cases as flawed because the case on which they relied was not discussing the issue of individual liability). However, in light of the language in *A.W.*—"Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against

individuals."—the Court rejects this argument.[11] Thus, all of the individual defendants are entitled to dismissal of the claim asserted against them in Count III.

### c. Immunity

Defendants also contend that the individual defendants should be dismissed based on the doctrine of absolute immunity, either because they were acting as legislators or judicial officers. *See B.P. by & through L.P. v. North Allegheny Sch. Dist.*, 579 F. Supp. 3d 713, 731 (W.D. Pa. 2022) (school board members were acting as "local legislators" when they voted to lift a mask mandate); *Behm v. Wilmington Area Sch. Dist.*, 996 A.2d 60, 64-65 (Pa. Commw. 2010) (school boards perform an adjudicative function as the factfinder in residency hearings).

Plaintiff responds that Defendants have not pointed to any facts to suggest that individual District members were engaging in a legislative capacity when they privately corresponded about whether his First Amendment protest could "be stopped." He further argues that he is not challenging their actions during adjudicatory hearings, but their retaliatory decision to selectively investigate G.W.'s residency, which did not involve "walking, talking, and acting as . . . judges." *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006).

As Plaintiff notes, some of his allegations appear to fall outside any legislative or judicial capacity in which the Board members may have acted. Plaintiff is not asserting that their acts in implementing a mask policy is actionable; rather, it is the forms of retaliation taken against him, and his children, after he protested this policy. While certain of Plaintiff's claims may be barred

---

[11] To the extent that Wynkoop asserts official capacity claims under the ADA for injunctive relief related to the accommodation of J.W., as explained above, such claims have been rendered moot by the expiration of the mask mandate. *See Brandt v. Cirillo*, 2023 WL 157431, at *14 (D.N.J. Jan. 10, 2023) (claims under ADA and Rehabilitation Act for injunctive or declaratory relief became moot because Brandt was no longer detained at the facility where the failure to accommodate occurred).

by judicial or prosecutorial immunity, the Court concludes that his issue cannot be determined in the context of a motion to dismiss with an undeveloped record. Defendants may raise this defense as appropriate based upon a fully developed record.

**D. <u>Claims brought on behalf of J.W. or G.W.</u>**

At oral argument, Plaintiff contended that Counts I and III are asserted on behalf of both J.W. and G.W. However, according to the factual allegations of the Amended Complaint, only J.W. had a medical disability which the District allegedly refused to accommodate and disenrollment proceedings were initiated only against G.W. Moreover, as reflected in the Commonwealth Court opinion of which the Court takes judicial notice, G.W. was never forced to attend a different school district. Therefore, to the extent that Plaintiff attempts to assert any claims on behalf of G.W., other than a claim that may be based upon an allegation that G.W. had his personal identification made public,[12] all such claims should be dismissed. Similarly, because there are no allegations that J.W. was forced to attend a different school district, any such claim should also be dismissed.

**E. <u>Damages</u>**

1. <u>Punitive damages</u>

Defendants move to dismiss Plaintiff's request for punitive damages, which are not available against a school district for claims under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981). "A school district is considered a local agency under the PSTCA, and therefore punitive damages are not recoverable against the District." *Doe by Brown v.*

---

[12] Plaintiff alleges that both J.W. and G.W. had their personal identification information made public. It is unclear if this allegation relates to any of the claims asserted and it was not raised as a ground for dismissal.

*Harrisburg Sch. Dist.*, 2020 WL 4584372, at *6 (M.D. Pa. Aug. 10, 2020). *See also A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Punitive damages are not available" under Section 504).

Plaintiff responds that he is seeking punitive damages against Hadley and the individual school board members in their individual capacities, and dismissal would be premature at this stage. *See Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 651 (M.D. Pa. 2016) (plaintiff sufficiently pled that defendants' actions "evinced a reckless or callous indifference to plaintiff's federally protected rights," so punitive damages against them in their individual capacities would not be dismissed).

The motion should be granted with respect to the School District and denied as to the individual defendants in their individual capacities.

2.  Liquidated damages

Defendants contend that Plaintiff cannot recover what he describes as "liquidated damages." Liquidated damages have been defined as "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable as agreed damages if the breach occurs." *In re Plywood Co. of Pa.*, 425 F.2d 151, 154 (3d Cir. 1970) (citation omitted).

Defendants contend that liquidated damages are not appropriate in claims under § 1983, the ADA or Section 504 because these statutes do not provide for this remedy. *See Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473, at *22 (W.D. Pa. Mar. 27, 2007) ("Under the ADA or Title VII, there is no provision for liquidated damages.") At oral argument, counsel conceded that liquidated damages are not recoverable here.

20

Therefore, the motion to dismiss should be granted with respect to Plaintiff's request for liquidated damages.

### F. **Attorney's Fees**

Defendants argue that Plaintiff cannot request attorney's fees with respect to his appeal of the residency determination regarding G.W. under Local Agency Law. Plaintiff responds that he is seeking attorney's fees under 42 U.S.C. § 1988(b) for all of Defendants' actions in this matter.

Plaintiff took an appeal of the District's February 14, 2022 adjudication that G.W. did not "reside" within the District and was thus not entitled to a free and public education pursuant to Section 1301 of the Pennsylvania Public School Code of 1949, 24 P.S. § 13-1301. The appeal was filed under Local Agency Law, 2 Pa. C.S. §§ 951-54, Defendants contend that, because the court did not find that the District's conclusion was procedurally flawed or made in bad faith, only that the evidence was not sufficient, Plaintiff cannot recover attorney's fees in connection with this appeal. They also argue that Local Agency Law does not provide for the recovery of attorney's fees.

As Plaintiff notes, federal law provides that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b).

Thus, because Plaintiff's claim under § 1983 remains this case, it is possible that Plaintiff could be awarded attorney's fees if he prevails, a determination that cannot be made at this time. Additionally, neither party has provided authority on whether the scope of an attorney's fees award would also include fees incurred as a result of the appeal of the District's residency determination. Therefore, this issue must be deferred until a later stage in these proceedings.

## III. Conclusion

For the reasons discussed, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 13) be granted in part and denied in part. Specifically:

1.     Count I should be dismissed against the individual defendants in their official capacities only;

2.     Count II should be dismissed;

3.     Count III should be dismissed with respect to the individual defendants only;

4.     As to G.W., all claims that may have been brought on his behalf should be dismissed other than the claim in Counts I and III that his personal information was made public;

5.     As to J.W., the claims in Count I and III relating to disenrolling her from the District should be dismissed;

6.     The claim for punitive damages against the School District should be dismissed;

7.     The request for liquidated damages should be dismissed; and

8.     In all other respects, the motion to dismiss should be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by August 21, 2023. Any party opposing the objections shall file a response by September 5, 2023. Failure to file timely objections will waive the right of appeal.


Dated: August 7, 2023                               /s/ Patricia L Dodge
                                                    PATRICIA L. DODGE
                                                    United States Magistrate Judge

23